**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 17-95-DLB-CJS**

**JUSTICIA RIZZO**                                                                     **PLAINTIFF**


**v.**                        **MEMORANDUM OPINION AND ORDER**


**ROBERT L. WILKIE, JR., Secretary**
**of Department of Veterans Affairs**                                  **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. # 46).  Plaintiff, who is proceeding without an attorney, has filed her response (Doc. # 49).  Defendant has replied (Doc. # 56).  The Motion is now ripe for the Court's review.  For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. # 46) is **granted**.

## I.      PROCEDURAL AND FACTUAL HISTORY

This case is the first of three actions filed by Plaintiff Justicia Rizzo stemming from her employment with the Cincinnati Department of Veterans Affairs between January 6, 2008 and November 16, 2016, where she worked full-time as an Administrative Assistant at the VA's Fort Thomas Community Living Center (CLC).[1]  (*Rizzo I*, Doc. # 13 at 4).

---

[1]      As stated, Plaintiff Rizzo has filed three actions with this Court regarding her 2008 to 2016 employment with the Department of Veterans Affairs: This case ("*Rizzo I*"), filed June 12, 2017; Case No. 2:18-cv-35-DLB-CJS ("*Rizzo II*"), filed March 9, 2018; and Case No. 2:18-cv-135-DLB-CJS ("*Rizzo III*"), filed July 25, 2018.  On January 30, 2019, by unopposed motion made by

Plaintiff also served as the timekeeper for the CLC as well as Union Steward.  (*Rizzo I*, Docs. # 13-1 at 5 and 22 at 2).  Plaintiff asserts that as a Union Steward, she has represented other employees in Equal Employment Opportunity ("EEO") cases against the Cincinnati VA.  (*Rizzo I*, Doc. # 13 at 4).

Plaintiff was first terminated from her position with the VA in December 2008.  (*Rizzo I*, Docs. # 13 at 3 and 22 at 2).  Subsequently, Plaintiff filed a complaint with the VA's Office of Resolution Management, asserting that she was terminated because she had filed an official complaint with the VA after being harassed by a co-worker.  (*Rizzo I*, Docs. # 13 at 1-3 and 13-1 at 30).  In March 2010, the parties entered into a settlement agreement with respect to the 2008 termination, wherein they agreed Plaintiff would be reinstated to her position of Administrative Assistant at the CLC.  (*Rizzo I*, Docs. # 13 at 13, 13-1 at 30-32, and 22 at 2).

Following her reinstatement, around June 2010, Plaintiff initiated a second EEO claim after additional alleged harassment by a co-worker.  (*Rizzo I*, Docs. # 13 at 1, 3 and 22 at 2).  Plaintiff contacted an EEO Counselor on September 24, 2010 regarding this this second harassment claim, which allegedly involved a co-worker placing a card on Plaintiff's desk that said "high yeller" on it.  (*Rizzo I*, Doc # 13 at 39-40; *see id*. at 37).  When counseling did not result in a resolution, Plaintiff filed a formal EEO complaint on January 6, 2011.  (*Id*. at 39-40).  This complaint was also resolved via settlement agreement in November 2011.  (*Rizzo I*, Doc. # 13-1 at 34-36).  The agreement indicates that following the filing of her June 2010 complaint, Plaintiff was issued a 14-day

Defendant Secretary (*Rizzo III*, Doc. 18), this case and *Rizzo III* were consolidated for all purposes, including trial (*Rizzo III*, Doc. 20), with all further filings to be made in this case.

suspension in August 2011, which would be expunged from her record.   (*Id.* at 34).
Neither the 2010 nor 2011 settlement agreements is the subject of litigation currently
before this Court.

The subject of *Rizzo I* arises out of events occurring from September 2012 through
March 2014.  (*Id.* at 2).  In February 2013, Plaintiff filed a formal EEO complaint (*Rizzo I*,
Docs. # 13-1 at 5, 13-1 at 23, and 22, at 3), wherein she alleged the VA had discriminated
against her on the basis of her race, national origin, and sex, and had retaliated against
her for the prior exercise of protected activity.  (*Rizzo I*, Doc. # 13-1 at 23-24).  The alleged
discrimination was based on acts which began in 2012 and continued through 2013.  (*See
id.* at 24).  The factual allegations concerning the claims filed in the February 2013 EEO
Complaint are as follows:

1)      In September 2012, Plaintiff alleged she asked a co-worker to do something
for her, and the co-worker became angry and hit Plaintiff with a door in front of the Nurse
Manager.  (*Rizzo I*, Doc. # 13 at 5).  She further alleged that the Nurse Manager asked
Plaintiff not to file a police report because they could work it out themselves.  (*Id.*).
Plaintiff's supervisor purportedly asked the Nurse Manager to issue a no contact order to
both the Plaintiff and the co-worker and ordered the co-worker written counseling for the
incident.

2)      In October 2012, the Supervisor asked Plaintiff to arrange to have a patient
bed picked up.  (*Id.*).  According to Plaintiff, there was a delay in having the bed picked
up, and the Supervisor insinuated that Plaintiff had deliberately caused the delay.  (*Id.*).
The Supervisor alleged that Plaintiff did not request the vendor pick up the bed and
instead sent him a union-related text message during company hours.  (*Id.*).  According

to the Supervisor, the incident resulted in a fact-finding hearing regarding Plaintiff's failure to have the bed picked up; however, no administrative or disciplinary action was taken. (*Id*.).

       3)     In December 2012, the Supervisor issued Plaintiff a 30-day suspension because of six emails the Supervisor found confrontational and disrespectful. (*Id*.). The Supervisor specifically references language requesting a restraining order, asking the Supervisor to explain himself regarding a decision, and language that accused the Supervisor of being disrespectful towards African American females. (*Id*. at 5-6). The Supervisor alleged he withdrew the proposed suspension after there was an informal mediation. (*Id*. at 6).

       4)     In January 2013, Plaintiff states that she requested official time to attend Workers' Compensation training, which the Supervisor denied. (*Id*.). Plaintiff further states that other employees are permitted to attend this training. (*Id*.). According to the Supervisor, he denied her request because of her job duties. (*Id*.).

       5)     In April 2013, the company removed a desktop computer from Plaintiff's office while she was at EEO training. (*Id*.). The Supervisor asserts that Plaintiff requested a laptop to bring to the training, so an IT employee removed Plaintiff's desktop computer because she had been issued a laptop. (*Id*.). Plaintiff alleges that she was initially told that her computer was taken because the Agency was upgrading to Windows 8 but was later told that she was being issued a laptop because she would be mobile. (*Id*.).

       6)     In May 2013, Plaintiff was told by a second supervisor that she was being transferred to the Agency's Cincinnati, Ohio office because she was impeding the

Supervisor's ability to do his job due to her confrontational attitude and her demand that all communication take place through email. (*Id*. at 7).

7)     In 2014, Plaintiff alleged she was placed on "authorized absence," her badge and computer were taken away from her, and she was asked to meet with the employee threat assessment team. (*Id*.).   She believed that the employee threat assessment team was going to have her committed to the psychiatric ward. (*Id*.).   The head of the threat assessment team stated that he does not have the authority to commit an employee to the psychiatric ward during a threat assessment meeting. (*Id*.).

The ALJ assigned to Plaintiff's February 2013 EEO Complaint held a hearing and issued a decision on September 8, 2014, finding that Plaintiff had failed to establish a prima facie case of harassment or retaliation, and further failed to prove that the VA subjected her to the discrimination alleged. (*Rizzo I*, Doc. # 13-1 at 8).   Plaintiff timely filed an appeal to the Equal Employment Opportunity Commission ("EEOC").   The EEOC issued its decision on November 3, 2016, finding in favor of the VA.   However, the Commission did find per se retaliation with respect to a proposed 30-day suspension issued to the Plaintiff. (*Id*. at 23-24).   Plaintiff requested reconsideration of the appeal, which was denied on March 7, 2017. (*Id*. at 25, 27).   Following the denial, Plaintiff initiated *Rizzo I* on June 12, 2017, and filed an Amended Complaint on September 19, 2017, alleging various Title VII claims. (*Rizzo I*, Docs. # 1 and 13).

Following the filing of her initial February 2013 EEO Complaint, and prior to a final decision, Plaintiff was placed on administrative leave in March 2014. (*Rizzo I*, Docs. # 13 at 8 and 22 at 4).   Defendant contends that it made this decision because between December 2013 and February 2014, Plaintiff was involved in multiple altercations on VA

premises, one of which resulted in a conviction for disorderly conduct. *See United States v. Rizzo*, No. 1:14-cr-124, 2015 WL 1475114 (S.D. Ohio Mar. 31, 2015); (*Rizzo I*, Doc. # 22 at 4). Plaintiff asserts that she remained on leave until October 2014, when her employment was terminated. (*See Rizzo I*, Doc. # 13 at 9; *Rizzo II*, Doc. # 2 at 2).

Following her termination in October 2014, Plaintiff asserts that she filed a timely appeal with the Merit Systems Protection Board ("MSPB"). (*Rizzo II*, Doc. # 2 at 2, 4). According to Plaintiff, the MSPB ALJ declared her a whistleblower, imposed a 3-day suspension in lieu of termination, and ordered Plaintiff be reinstated in March 2016. (*Id*. at 2). However, Plaintiff states that the MSPB ALJ did not find the Agency responsible for any alleged retaliation. (*Id*. at 8). Plaintiff asserts that this was because the Agency representatives lied under oath, claiming not to have knowledge of her whistleblower activity. (*Id*.).

Following her reinstatement, Plaintiff alleges she was subject to further discrimination and retaliation. (*Id*. at 3, 5). Specifically, Plaintiff asserts that "the VA ordered the Petitioner to come to work despite not issuing a badge or computer access and waiting nearly [two] months before paying her. The Agency [s]ubmitted paperwork indicating that they had reinstated her to her position as an Administrative Assistant" within the same department; however, Plaintiff alleges she was involuntarily reassigned to the PTSD clinic. (*Id*. at 3, 5). The record shows that in April 2016, Plaintiff was assigned "to an Administrative Support Assistant, GS-7, position in Research" in the "Trauma Recovery Center (commonly referred to as PTSD clinic)." (*Rizzo II*, Doc. # 16-3 at 4). Plaintiff alleges that she requested transfers and applied to other open positions within the VA, but her requests were denied. (*Rizzo II*, Doc. # 2 at 6).

Plaintiff asserts that her new position required her to undergo additional training, did not equate to her previous duties, and stripped her of "all grade leveling duties and assignments." (*Rizzo II*, Doc. # 2, at 5). She also claims that the Agency falsified documents to make it appear that she was reinstated to a position with a similar description. (*Id*. at 6). Plaintiff further alleges that her employer "deliberately orchestrate[d] an administrative scheme to place her in a position she did not want, in order to provoke her, create an atmosphere for a constructive discharge and/or a hostile work environment." (*Id*. at 5).

The record indicates that once Plaintiff was relocated to the PTSD clinic, she failed to perform almost any task because she objected to the reassignment. (*See Rizzo II*, Docs. # 16-2 at 11-12 and 16-3 at 4). Plaintiff further admits that she began to repeatedly call in sick to work as a result of depression. (*Rizzo II*, Doc. # 2 at 6). On July 12, 2016, Plaintiff's supervisor suspended her for 10 days following an email sent in May 2016 in which Plaintiff refused to perform an assigned task. (*Rizzo II*, Doc. # 16-3 at 5-6). On September 9, 2016, Plaintiff's supervisor suspended her for an additional 14 days on the basis that she had failed to perform required training and sent emails deemed to be inappropriate. (*Id*. at 6-8). On November 18, 2016, Plaintiff's employment was terminated. (*Rizzo II*, Doc. # 16 at 1; *see Rizzo III*, Doc. # 2 at 5).

Plaintiff's reassignment and subsequent suspensions form the basis of *Rizzo II*, in which Plaintiff sought review of a final decision issued by the EEOC on February 6, 2018, addressing those actions. (*See Rizzo II*, Doc. # 2 at 1 11-12). Following her September 2016 suspension, Plaintiff "attempted to file a complaint with the Office of Special Counsel (OSC) . . . [however,] due to an OSC error her new allegations were added to a previous

complaint filed in 2014." (*Rizzo II*, Doc. # 16-3 at 8).  On May 21, 2017, Plaintiff filed an individual right of action with the MSPB, asserting violations of the Whistleblower Protection Act and Whistleblower Protection Enhancement Act when she was involuntarily reassigned and issued the subsequent suspensions. (*Id*. at 3-4).

Plaintiff's termination in November 2016 forms the basis of *Rizzo III*, in which Plaintiff seeks review of a final decision issued by the EEOC on June 13, 2018 regarding the removal.[2]  (*See Rizzo III*, Docs. # 2 at 1 and 2-1 at 52-56).  Plaintiff filed a timely administrative appeal from the agency's termination of her employment on December 14, 2016.  (*Rizzo III*, Doc. # 2-1 at 58).  Pursuant to her request, the Plaintiff's December 2016 appeal to the MSPB was consolidated for a hearing with her action filed May 21, 2017, concerning her 2016 suspensions.  (*Rizzo III*, Doc. # 2-1 at 57; *Rizzo II*, Doc. # 16-2 at 1-2).  A combined hearing was held on the appeals in fall 2017.  (*Rizzo III*, Doc. # 2-1 at 57-58; *Rizzo II*, Doc. # 16-2 at 2).

Following the consolidated hearings, the MSPB—acting without a quorum—issued a decision in each appeal.  On November 16, 2017, addressing the May 2017 action based upon Plaintiff's reassignments and subsequent suspensions, the MSPB found that the VA did not violate the Whistleblower Protection Act or the Whistleblower Protection Enhancement Act.  *Rizzo* v. *Dep't of Veterans Affairs*, No. CH-1221-17-0365-W-1, 2017 WL 5569384 (Merit Systems Protection Board Nov. 16, 2017).  (*See Rizzo II*, Docs. # 2 at 11 and 16-3).  On January 21, 2018, Plaintiff filed a petition with the EEOC seeking

---

[2]     Plaintiff states that she seeks review of the decision issued by the EEOC on June 18, 2018.  However, no decision by the EEOC concerning Plaintiff was issued on June 18, 2018, and, further, Plaintiff attaches a copy of the decision in question, dated June 13, 2018.  (*Rizzo III*, Doc. # 2-1 at 52-55).

review of the MSPB's decision issued on November 16, 2017.  (*Rizzo II*, Doc. # 2 at 11).

The EEOC declined to consider the case because it involved only whistleblower issues

and not discrimination.  (*Id.*).  The EEOC decision became final on February 13, 2018,

(*see id.* at 12, 13), and Plaintiff subsequently filed her Complaint in *Rizzo II* on March 9,

2018.  (*Rizzo II*, Doc. # 2).  In that Complaint, she alleged one count of retaliation for her

whistleblower activities, and a claim of intentional infliction of emotional distress because

the agency required her to do the assigned duties in the PTSD Clinic despite the fact that

she was not hired for that position and did not want to work in that department.  (*Id.* at 6,

8).  This Court dismissed *Rizzo II* for lack of jurisdiction to review final decisions issued

by the MSPB which raise "pure whistleblower claims."  The Court held that review of such

decisions must be appealed to the Federal Circuit.  (*Rizzo II*, Doc. # 25).

Regarding the December 2016 appeal based upon Plaintiff's November 2016

termination, the MSPB issued its decision on January 9, 2018 (*Rizzo III*, Doc. # 2-1 at 57-

104), in which the ALJ found that although Plaintiff did make one protected disclosure as

a whistleblower, she failed to prove that the disclosure was a contributing factor in her

removal. *Rizzo* v. *Department of Veterans Affairs*, No. CH-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-I-2 (Merit

Systems Protection Board Jan. 9, 2018).  Ultimately, the ALJ found that the penalty of

termination was reasonable and affirmed the VA's action.  On March 13, 2018, Plaintiff

filed a timely petition with the EEOC asking for review of the MSPB's decision.  (*Rizzo III*,

Doc. # 2-1, at 52).  On June 13, 2018, the EEOC concurred with the MSPB's decision

and found that the VA "articulated legitimate, nondiscriminatory reasons for its actions,

namely, that Plaintiff was terminated because she refused to do the work assigned to

her."  (*Id.* at 54).  The MSPB decision became final on June 18, 2018, (*see id.* at 54, 56),

and Plaintiff subsequently filed her Complaint in *Rizzo III* on July 25, 2018.   (*Rizzo III*, Doc. # 2).   In that Complaint, she asserts claims for retaliation (Count I), disparate treatment (Count II), hostile work environment (Count III), and further alleges the ALJ originally assigned to her MSPB claim erred in judgment.[3]  (*Id*. at 7, 10-11).

After discovery in the consolidated *Rizzo I* and *Rizzo III* cases, Defendant filed a Motion for Summary Judgment.   (*Rizzo I*, Doc. # 46).   In the Motion, Defendant argues that, even at the close of discovery, Plaintiff has failed to offer evidence to support her allegations.   (*Rizzo I*, Doc. # 46-,1 at 3-4).   Plaintiff's Response appears to argue that she was the victim of a large conspiracy at the VA, and the Title VII violations she alleged were the result of that conspiracy.   (*Rizzo I*, Doc. # 49).

## II.   ANALYSIS

Summary Judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   In reviewing a motion for summary judgment, the Court views "all facts and any inferences in the light most favorable to the nonmoving party."   *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390 (6th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).   A party can make a valid motion for summary

---

[3]      These asserted errors by the administrative law judge are not proper claims presented before the Court pursuant to Title VII.   Therefore, to the extent Plaintiff brings a cause of action based on these errors, summary judgment is granted in favor of Defendant.   *See Bolden v. Ashcroft*, No. Civ.A. 03-1030 (EGS), 2005 WL 1903567 (D.D.C. July 15, 2005) ("[D]issatisfaction with the EEO administrative process does not provide the basis for either a separate EEO claim or a federal claim of discrimination.").   Further, in her response, Plaintiff accused the administrative law judge of being biased against her.   This claim was not brought in any of Plaintiff's Complaints and therefore will not be reviewed by this Court.   *See Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 817 (6th Cir. 2020) ("[Plaintiffs] cannot raise new claims in response to summary judgment.").

judgment by pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case" on an issue. *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Further, the moving party is entitled to summary judgment "when the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849 (6th Cir. 2020) (quoting *Celotex Corp.*, 477 U.S. at 322).

When the moving party has met its burden by pointing out the absence of sufficient evidence, "the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *see also Carter v. Toyota Motor Mfg., Ky., Inc.*, No. 5:15-373-DCR, 2017 WL 2111642, at *3 (E.D. Ky. May 15, 2017). Conclusory allegations, speculations, and unsubstantiated assertions are not evidence for purposes of summary judgment. *See Tyson v. Sterling Rental, Inc.,* 836 F.3d 571, 583 (6th Cir. 2016) (quoting *Gooden v. Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003)). A respondent to a motion for summary judgment must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Smith v. Freland*, 954 F.2d 343, 345 (6th Cir. 1992) (citing *Celotex Corp.*, 477 U.S. at 324). Going beyond one's own pleadings requires that the non-movant "adduce concrete evidence on which a reasonable juror could return a verdict in her favor." *Fenney v. Wal-Mart Stores East, LP*, 441 F. Supp. 3d 365, 638 (W.D. Tenn. Jan. 3, 2020) (citing *Stalbosky v. Belew*, 205 F.3d 890, 895 (6th

Cir. 2000) (finding statements in an affidavit which were "too conclusory and vague" as insufficient to successfully counter a motion for summary judgment)).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).  Addressing a *pro se* complaint, the court in *Webb v. Kentucky Department of Public Advocacy* found that:

> The Court's duty does not require [it] to conjure up unpled allegations, *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff, *Clark v. National Travelers Life Insurance Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.

*Webb*, No. 5:17-cv-P81-TBR, 2017 WL 3441082, at *2 (W.D. Ky. Aug. 9, 2017) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (internal quotations omitted)).

Plaintiff relies on circumstantial evidence; therefore, her claims of discrimination, retaliation, and hostile work environment will be analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-07 (1973). *See George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020).  "Under that framework, [Plaintiff] carries the initial burden of establishing a prima facie case of discrimination or retaliation," and, if she can, "the burden then shifts to [Defendant], who must 'articulate some legitimate, non-discriminatory reason for [its] actions.'"  *Id.* (quoting

*Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).  Further, "court actions under Title VII are de novo proceedings[.]"  *McDonnell*, 411 U.S. at 799 (citing *Robinson v. Lorillard Corp.*, 444 F.2d 791, 800 (4th Cir. 1971)).

As discussed herein, Plaintiff has failed to meet her burden of establishing a prima facie case as to any of her claims, which includes retaliation/discrimination, disparate treatment, and hostile work environment as alleged in both *Rizzo I* and *Rizzo III*.  The Court will examine each claim in turn.

## A.   Retaliation

Plaintiff alleges in Count 1 of her Amended Complaint in *Rizzo I* (Doc. # 13) that the Agency committed both discrimination and retaliation against her after the Agency: (1) charged Plaintiff with a disciplinary action for alleging discrimination, and for her representation of other employees in their own EEO cases; (2) failed to "rate her for nearly 3 years following her original EEO Claims"; (3) retaliated for filing reports against "Caucasian Females guilty of harassing her, physically assaulting her, and threatening her" and for failing to discipline any of these women by requiring them to meet with a psychiatric nurse or placing them on administrative leave; and (4) took her workplace computer from her office, which she says was retaliatory given that her computer held her "AFGE EEOC case files" and "templates and forms she had created to do her work." (*Rizzo I*, Doc. # 13 at 10).

In Count 1 of her Complaint in *Rizzo III* (Doc. # 2), Plaintiff makes the same allegations as she did in her Amended Complaint in *Rizzo I*, with the addition that the Agency retaliated against her by reassigning her, removing various duties, and failing to issue her performance standards.  (*Rizzo III*, Doc. # 2 at 10).  Plaintiff also alleges that

she was retaliated against when the AFGE Union refused to negotiate her change in working conditions, despite the Union's previously representing other employees for their change in working conditions.  (*Id.*).

To establish a prima facie case of retaliation under Title VII, a plaintiff must show the following four elements: "(1) engage[ment] in activity protected by Title VII; (2) [the] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *George*, 966 F.3d at 459 (quoting *Laster*, 746 F.3d at 730).  "In analyzing the significance of any given act of retaliation, '[c]ontext matters.  The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships[.]'" *Laster*, 746 F.3d at 731 (quoting *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 69 (2006)).

For the first prong, "there are two types of protected activity: participation in a proceeding with the [EEOC] and opposition to an apparent Title VII violation."  *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 469 (6th Cir. 2012) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)).  "[C]omplaining about allegedly unlawful conduct to company management is classic opposition activity." *Wasek*, 682 F.3d at 489 (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000) ("The [EEOC] has identified a number of examples of 'opposing' conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices.")).  However, to obtain

Title VII's protections, the plaintiff must have had "a reasonable and good faith belief" that the harassing acts she was reporting were Title VII violations. *Johnson*, 215 F.3d at 579.

For the second prong, the Sixth Circuit has made clear that the "decisionmaker" must be the individual with knowledge of Plaintiff's protected activity. *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002). For the third prong, "a plaintiff needs to show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 616-17 (6th Cir. 2019) (quoting *Burlington N.*, 548 U.S. at 68). Examples of materially adverse actions are "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000).

For the fourth prong, a plaintiff must show a "but for" cause, *Redlin*, 921 F.3d at 614-15 (quoting *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)), which can be established by producing "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had plaintiff not filed a discrimination action," *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Temporal proximity can satisfy the fourth prong when it occurs "very close" in time after an employer learns of a protected activity, but if such a time is longer than "days or weeks" from when the employer learns of the adverse action, "an employee can still prevail if she couple[s] temporal proximity with other evidence of retaliatory conduct to establish causality." *George*, 966 F.3d at 459 (internal citations omitted).

Plaintiff has failed to engage in any discovery in this matter and provided the Court with nothing more than excerpts from the administrative record and her own conclusory allegations in her pleadings.  In light of this lack of proof, her claims for all alleged incidents of retaliation fail.  *See Smith v. Freland*, 954 F.2d 343, 345 (6th Cir. 1992) (quoting *Celotex Corp.,* 477 U.S. at 324) ("As a respondent to a motion for summary judgment, [plaintiff] is required by Fed. R. Civ. P. 56(e) to go beyond the pleadings and by her own affidavits . . . designate specific facts showing that there is a genuine issue for trial.") (internal quotations omitted)).  Plaintiff has rested on the conclusory allegations in her Complaint, which are insufficient to survive summary judgment.  *See Stalbosky*, 205 F.3d at 895 (party cannot rely on conclusory and vague statements to successfully counter a motion for summary judgment); *see also Beckett v. Ford*, 384 F. App'x 435, 443 (6th Cir. 2010) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves[.]") (quoting *Celotex Corp.*, 477 U.S. at 324).  In any event, Plaintiff has not alleged any causal or "but for" connection between any protected activity she engaged in and the actions she claims were taken in retaliation for said protected activity.  On that basis her claims also fail.

As to any standalone discrimination claim Plaintiff might have alleged, Plaintiff has claimed the Agency discriminated against her on the basis of her race, national origin, and sex.  (*Rizzo III*, Doc. # 2 at 2).  Plaintiff's pleadings have not alleged that any of the actions at issue occurred because of her national origin or sex; thus, Plaintiff has failed to state a basis for relief as to these claims.  Further, Plaintiff has failed to describe anything which indicates that the EEOC ever considered her claims for discrimination

based on national origin and gender.  Summary judgment is therefore warranted on Plaintiff's national origin and sex discrimination claims.

As to any claimed race discrimination, Plaintiff must establish a prima facie case which includes the following elements:  (1) that she is a member of a protected class; (2) that she was qualified for the job; (3) that she suffered an adverse employment decision; and (4) that similarly situated non-protected employees were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802; *see also Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).  Here, as with the other claims in her Complaints, Plaintiff has failed to provide any proof other than her own allegations that similarly situated white employees were treated more leniently or more favorably with regard to discipline for various workplace violations.  *See Wolfe v. Norfolk S. Ry. Co.*, 66 F. App'x 532, 534-35 (6th Cir. 2003) (per curiam).

**B.    Disparate Treatment**

Plaintiff's claims for disparate treatment overlap with her claims of hostile work environment and retaliation.  She alleges that she was treated disparately when she: (1) was the only employee not receiving a performance appraisal; (2) was harassed by "Caucasian co-workers," who received little or no discipline while she was suspended for thirty days; (3) was placed on administrative leave and stripped of her duties following her March 2014 EEO Settlement Conference; (4) was forced to meet with Agency Threat Assessment without making any threats while the "Caucasian Nurse" who threatened her three times with death was not; (5) was involuntarily reassigned and placed in a department "where all the other Administrative employees were Caucasian and were not required to work in the PTSD clinic or perform her duties"; (6) was almost reassigned to

a program which would require her to "job share" with a "Caucasi[a]n Female"; and (7) was ordered to do "CITI training which is not a VA Training without negotiating her change in duties, issuing a memorandum of understanding, or providing her with federal regulated performance standards[]."  (*Rizzo I*, Doc. # 13 at 10-11; *Rizzo III*, Doc. # 2 at 11).

A disparate treatment claim requires showing: "that (1) [Plaintiff] belonged to a protected class, (2) suffered an adverse employment action, (3) met the qualifications for [the] position, and (4) was treated differently from a similar employee who does not belong to [the] protected class."  *Hudson v. City of Highland Park, Mich.*, 943 F.3d 792, 802 (6th Cir. 2019).  In the disparate treatment context, an adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Laster*, 746 F.3d at 727.  "In the disciplinary context . . . to be found similarly situated, the plaintiff and [her] proposed comparator must have engaged in acts of comparable seriousness."  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006).

Plaintiff's assertion that she was the only employee not receiving a performance appraisal fails on the same ground as her retaliation claim concerning lack of performance appraisal: she has not shown that there was an adverse employment action.  Plaintiff points to no facts in the record which show that the lack of performance appraisals resulted in hiring, firing, or failure to promote.  *See Allen v. Ohio Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 889-90 (S.D. Ohio 2010) (finding that plaintiff did not establish an adverse employment action through performance evaluations when all he had was "unsupported speculation").

Plaintiff's assertions that she was harassed by "Caucasian workers" and received disparate punishment fail because Plaintiff has not shown that her purported comparators engaged in acts of similar seriousness or that she suffered an adverse employment action. Plaintiff's thirty-day suspension, which was reduced to three days after the EEOC's decision, does not amount to an adverse employment action. Further, Plaintiff's thirty-day suspension was proposed as a result of her sending six emails that her first-line supervisor found to be confrontational and disrespectful in tone, (Doc. # 46-3 at 2-3), whereas her co-workers, even when viewing the facts in the light most favorable to Plaintiff, committed no similar offense.

Furthermore, Plaintiff has failed to show how an involuntary reassignment to the PTSD clinic, a change in duties when her former position was no longer available, or placement in a department with all Caucasian employees constituted an "adverse employment action." Plaintiff received the same pay, and her duties, aside from interacting with patient files, were substantially the same. (*See Rizzo I*, Doc. # 49-3 at 6, 38-44 (containing descriptions of CLC administrative support assistant and research administrative support assistant duties)). Additionally, it is unclear how being directed to perform a training required for her new position would constitute disparate treatment. Plaintiff has failed to evidence an adverse employment action or that a similarly situated employee who is not African American was not required to complete the training, or was never reassigned to a new position upon reinstatement after the former position had been filled. Plaintiff wholly fails to establish a prima facie case of disparate treatment as to any of her allegations.

Even assuming Plaintiff has demonstrated a genuine issue of material fact as to her prima facie case, summary judgment would still be warranted because Plaintiff has offered no evidence of pretext. *See Hall v. AK Steel Corp*., No. 15-31-HRW, 2017 WL 4415655 (E.D. Ky. Sept. 29, 2017) (stating that "[t]he lack of proof of disparate treatment is fatal to Plaintiff's claim of racial discrimination," in granting a motion for summary judgment); *see also Freland*, 954 F.2d at 345 (quoting *Celotex Corp.,* 477 U.S. at 324) ("As a respondent to a motion for summary judgment, [plaintiff] is required by Fed. R. Civ. P. 56(e) to go beyond the pleadings and by her own affidavits . . . designate specific facts showing that there is a genuine issue for trial.") (internal quotations omitted)).[4]  The mere conclusory allegations which Plaintiff has presented by way of her Complaints and Response (*Rizzo I*, Doc. # 49) are insufficient to successfully counter Defendant's Motion for Summary Judgment.  *See Stalbosky*, 205 F.3d at 895 (noting that a party cannot rely on conclusory and vague statements to successfully counter a motion for summary judgment).

### C.    Hostile Work Environment

Defendant asserts that Plaintiff has not produced any direct or circumstantial evidence of hostile work environment, and therefore fails to establish a prima facie case. (Doc. # 46-1 at 3-4).  Defendant further asserts that the administrative records filed in this Court "clearly show" that there is no genuine issue of material fact.  (*Id*. at 4).  In her Complaints, Plaintiff alleges she suffered hostile work environment because: (1) she was blamed for an incident at work she was not responsible for; (2) her supervisor "continually

---

[4]    The analysis in this paragraph applies equally to Plaintiff's claim of disparate treatment when a white co-worker who threatened her three times was not forced to meet with Threat Assessment.

tried to find fault with her" because of her race and refused to provide her an annual rating; (3) she was forced to work with a co-worker who assaulted her; (4) she was forced to participate in a Union that failed to advocate for her rights; and (5) she was verbally threatened twice by her supervisor.  (*Rizzo I,* Doc. # 13 at 11-12; *Rizzo III*, Doc. # 2 at 13-14).

Other than the allegations in the Complaints, Plaintiff's Response appears to allege a large, overarching conspiracy at the VA to target her because she was standing up to corruption and confronting a racist work environment within the Agency.  Specifically, Plaintiff alleges that:

> The Law requires a person to file a separate complaint against the Union which the Plaintiff is only one person attempting to stand against corruption because any would be witnesses don't want to get targeted, fired or brought up on false charges.  The Plaintiff is <u>not</u> the only person that has become victim of the VA conspiracies involving the AFGE Union and General Council. . . . The Plaintiff stands firm on the fact that she is a victim of civil rights violations, retaliation and discrimination but the Agency Wide Corruption and criminal level racketeering schemes involving Civil rights conspiracies are being ignored. . . . The Plaintiff was fired in 2014 despite any involvement from her direct supervisor at the time Jan Minkle, her supervisor of record did <u>not</u> submit any paperwork to terminate the Plaintiff and was <u>not</u> even listed as an agency witness . . . .  The Agency provides a memo **not** on a VA letter head or signed by anyone but in the memo there are vague statements about alleged threats the Plaintiff allegedly made this letter advising the Plaintiff to meet with the threat assessment team was sent via US Postal Service mail **NOT** on a VA letter head and not signed by anyone and the names of the so called victims are missing from the memo as if the memo is simply a ploy to confine the Plaintiff on a closed psychiatric ward . . . . The Plaintiff alleges General Council Demetrius Harris is part of one "wheel conspiracy" out of the multiple wheel conspirators who worked with the VA police to have her brought up on **false** criminal charges . . . .

(*Rizzo I*, Doc. # 49 at 4-7).  Plaintiff puts forth additional allegations, including that the VA deliberately created a situation to blame her for stalking a co-worker after destroying all evidence that could exonerate her; that the VA contains a "modern day plantation

mentality" where the African American workers are rewarded for oppressing each other; and that someone left pesticides in her office designed to kill her.  (*Id*. at 3, 7-8).

"A hostile work environment claim requires proof that (1) plaintiff belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known about the harassment."  *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017).  "In determining whether an actionable hostile work environment claim exists, [a court] look[s] to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *AMTRAK v. Morgan*, 536 U.S. 101, 116 (2002) (internal citations omitted).  Significantly, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

The test is both objective and subjective, which is to say that the conduct "must constitute a hostile or abusive working environment both to the reasonable person and the actual victim."  *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).  The determination of a hostile work environment claim is not "a mathematically precise test," and "the issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case."  *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (internal citations omitted).

Plaintiff's allegations range from the mundane to the criminal. However, they all fail one or more prongs of the hostile work environment test. For instance, that Plaintiff's supervisor held a fact-finding on whether she erred in delivery of the bed or whether she used company time to engage in union activity, that her supervisor "continuously tried to find fault with her," or that she was forced to work with a co-worker who assaulted her, do not satisfy the harassment prong. While Plaintiff may find these actions subjectively abusive, an objective, reasonable individual would not find these actions abusive or that they constitute harassment, particularly in light of the alleged circumstances surrounding each event (such as that the fact-finding occurred after Plaintiff failed to have a bed picked up as directed, that there were various issues that arose related to Plaintiff's tone and statements within emails directed to her supervisor and other VA employees, and that the alleged "assault" was determined to have been accidental). Therefore, Plaintiff's allegations also fail to satisfy the remainder of the prongs, which are all conditional on harassment occurring.

Plaintiff's factual allegations that she raises for the first time in her Response, including that a racist conspiracy at the VA led to her being targeted for disciplinary action, that she was framed for stalking a co-worker, and that she was poisoned by someone at the VA, will not be considered. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that plaintiff could not raise a new claim in response to a summary judgment motion).

Further, Plaintiff's claims fail because she has not presented any evidence in support of her allegations of hostile work environment in any form. As stated previously,

the only evidence in the record other than her own assertions and allegations is excerpts of the administrative record, which contain no evidence in support of her claims of a hostile work environment and conspiracy based on racism or retaliation.  *See Freland*, 954 F.2d at 345 (quoting *Celotex Corp.*, 477 U.S. at 324) ("As a respondent to a motion for summary judgment, [plaintiff] is required by Fed. R. Civ. P. 56(e) to "go beyond the pleadings and by her own affidavits . . . designate 'specific facts showing that there is a genuine issue for trial.'").  The mere conclusory allegations that Plaintiff has presented by way of her Complaints and Response (*Rizzo I*, Doc. # 49) are insufficient to successfully counter Defendant's Motion for Summary Judgment.  *See Stalbosky*, 205 F.3d at 895 (party cannot rely on conclusory and vague statements to successfully counter a motion for summary judgment).

## III.    CONCLUSION

Accordingly, for the reasons set forth above, **IT IS ORDERED** as follows:

(1)    Defendant's Motion for Summary Judgment (Doc. # 46) is **granted**;

(2)    Plaintiff's Amended Complaint (Doc. # 13) is **dismissed with prejudice**;

(3)    This action, including the consolidated action No. 2:18-cv-135-DLB-CJS, is **stricken** from the Court's active docket;

(4)    A Judgment will be entered contemporaneously herewith.

This 25th day of November, 2020.



Signed By:

*David L. Bunning*

United States District Judge